# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-941


**SHIRLENE BRITT, ET AL.**

**VERSUS**

**RICELAND PETROLEUM COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-0397-14
HONORABLE EDWARD J. GAIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Elizabeth A. Pickett, Judges.


**AFFIRMED.**

**Alan David Ezkovich**
**Ezkovich & Co., LLC**
**650 Poydras Street - Suite 1220**
**New Orleans, LA 70130**
**Telephone: (504) 593-9899**
**COUNSEL FOR:**
> **Defendant/Appellant - Mt. Hawley Insurance Company**


**Stephen Douglas Baker**
**Law Office of Stephen Baker**
**412 West University Avenue – Suite 101**
**Lafayette, LA 70506**
**Telephone: (337) 235-8298**
**COUNSEL FOR:**
> **Defendant/Appellee - Riceland Petroleum Company**

**Sidney Wallis Degan, III**
**Catherine N. Thigpen**
**Degan, Blanchard & Nash**
**400 Poydras Street, Suite 2600**
**New Orleans, LA 70130**
**Telephone:  (504) 529-3333**
**COUNSEL FOR:**
> **Defendant/Appellee - Evanston Insurance Company**

**Chad Ellis Mudd**
**David Paul Bruchhaus**
**Michael Keith Prudhomme**
**Matthew P. Keating**
**Mudd & Bruchhaus, L.L.C.**
**410 East College Street**
**Lake Charles, LA 70605**
**Telephone:  (337) 562-2327**
**COUNSEL FOR:**
> **Plaintiffs/Appellees – C. W. Britt, Norma Jean Broussard, Michael D Meche, Barbara Britt, Beulah Britt Meche, Shirlene Britt, Joyce Britt Doherty, and Jeffrey Meche**

**Eric Earl Jarrell**
**King, Krebs & Jurgens, PLLC**
**201 St. Charles Avenue – Suite 4500**
**New Orleans, LA 70170**
**Telephone:  (504) 582-3814**
**COUNSEL FOR:**
> **Defendant/Appellee – Conoco Phillips Company**

**John William Hite, III**
**Salley, Hite, Mercer & Resor, LLC**
**One Canal Place**
**365 Canal Street - Suite 1710**
**New Orleans, LA 70130**
**Telephone:  (504) 566-8800**
**COUNSEL FOR:**
> **Defendant/Appellant - United National Insurance Company**

**Robert Michael Kallam**
**Preis PLC**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**Telephone:  (337) 237-6062**
**COUNSEL FOR:**
> **Defendant/Appellee - Riceland Petroleum Company**

**Céleste D. Elliott**
**Anne E. Briard**
**Lugenbuhl, Wheaton, Peck, Rankin and Hubbard**
**601 Poydras Street – Suite 2775**
**New Orleans, LA 70130**
**Telephone:  (504) 568-1990**
**COUNSEL FOR:**
> **Defendants/Appellants - Northfield Insurance Company, St. Paul Fire and Marine Insurance Company, and St. Paul Surplus Lines Insurance Company**

**Thear J. Lemoine**
**Brown Sims**
**1100 Poydras Street - 39th Floor**
**New Orleans, LA 70163**
**Telephone:  (504) 569-1007**
**COUNSEL FOR:**
> **Defendant/Appellee - Westchester Fire Insurance Company**

**Kelly B. Becker**
**Kathryn Z. Gonski**
**Liskow & Lewis**
**One Shell Square**
**701 Poydras Street - Suite 5000**
**New Orleans, LA 70139-5099**
**Telephone:  (504) 581-7979**
**COUNSEL FOR:**
> **Defendant/Appellee - BP America Production Company**

**Penny L. Malbrew**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**Telephone:  (337) 232-7424**
**COUNSEL FOR:**
> **Defendant/Appellee - BP America Production Company**

**Jonathan B. Womack**
**Taylor Wellons Politz & Duhe, APLC**
**1515 Poydras Street – Suite 1900**
**New Orleans, LA 70112**
**Telephone:  (504) 525-9888**
**COUNSEL FOR:**
> **Defendant/Appellant - Commerical Union Assurance Company PLC**

**Ross J. Donnes**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**Telephone: (225) 400-9991**
**COUNSEL FOR:**
**Plaintiffs/Appellees – C. W. Britt, Barbara Britt, Norma Jean Broussard, Jeffrey Meche, Michael D Meche, Shirlene Britt, Joyce Britt Doherty, and Beulah Britt Meche**

**Cory T. Stuart**
**Larzelere Picou Wells Simpson**
**3850 North Causeway Boulevard – Suite 110**
**Metairie, LA 70002**
**Telephone: (504) 834-6500**
**COUNSEL FOR:**
**Defendant/Appellee - Gotham Insurance Company**

**Margaret V. Glass**
**Gieger, Laborde & Laperouse, LLC**
**One Shell Square**
**701 Poydras Street – Suite 4800**
**New Orleans, LA 70139-4800**
**Telephone: (504) 561-0400**
**COUNSEL FOR:**
**Defendant/Appellant - Lexington Insurance Company**

**THIBODEAUX, Chief Judge.**

In this legacy lawsuit governed by La.R.S. 30:29 (Act 312), several landowners (plaintiffs)[1] sued Riceland Petroleum Company (Riceland) and BP America Production Company (BP), seeking remediation of their property contaminated by historical oil and gas operations conducted by the defendants. Riceland subsequently filed a third-party demand against several of its insurers (Certain Insurers),[2] all of whom denied coverage. The plaintiffs eventually settled all their claims against Riceland and BP and provided notice to the Louisiana Department of Natural Resources (LDNR) and the Attorney General (AG) of the settlement, as required by La.R.S. 30:29(J)(1). Receiving no objection therefrom, the plaintiffs moved for the trial court's approval, which the court ultimately granted after a hearing. Interpreting the provisions of La.R.S. 30:29(J), we find that all of the requirements for approval of the settlement herein have been satisfied. Finding no legal error, we affirm the trial court's judgment.

I.

**ISSUES**

Certain Insurers ask this court to decide:

(1)    whether the trial court erroneously applied the law by failing to determine whether remediation is required prior to signing the Judgment for

---

[1]The plaintiffs are Shirlene Britt, Barbara Britt, C. W. Britt, Norma Jean Broussard, Joyce Britt Doherty, Michael D. Meche, Beulah Britt Meche, Jeffrey Meche, Linda F. Smith, Marjorie Britt Morvant, Kelly Britt Layman, William John Britt, Terri S. Britt, Kyle Reed, Barbara S. Morgan, Helen Morgan Shipman, John M. Suggs, Dwight J. Hollier, Mary R. Hollier, Matthew E. Miller, Douglas E. Miller, and MPIC, L.L.C.

[2]Certain Insurers are St. Paul Fire and Marine Insurance Company, St. Paul Surplus Lines Insurance Company, Northfield Insurance Company, Lexington Insurance Company, United National Insurance Company, Mt. Hawley Insurance Company, and Commercial Union Assurance Company PLC.

Approval of Settlement in this case governed by Act 312; and,

(2) if remediation is necessary in this case governed by Act 312, whether the trial court erroneously signed the Judgment for Approval of Settlement without monies being deposited into the registry of the court?[3]

II.

**FACTS AND PROCEDURAL HISTORY**

This matter involves property contamination caused by historic oil and gas operations conducted on or near a tract of land located in Jefferson Davis Parish. On June 25, 2014, the plaintiffs filed suit against Riceland and BP, as the current and former operators, seeking damages for and remediation of the contamination. Riceland, in turn, filed a third-party demand against Certain Insurers, seeking indemnity, contribution, payment of attorneys' fees, defense costs, and other expenses available under the applicable insurance policies issued to Riceland. Certain Insurers answered the third-party demand, denying coverage under any of the applicable policies.

After nearly three years of litigation, the plaintiffs, BP, and Riceland (settling parties) reached a compromise to resolve all of the plaintiffs' claims against BP and Riceland. As part of the settlement agreement, BP and Riceland agreed to remediate the property in accordance with state regulatory standards. In addition, Riceland assigned to the plaintiffs its rights, causes of action, claims, or abilities to recover against Certain Insurers under any applicable insurance

---

[3]Certain Insurers also raise an issue as to the trial court's suggestion, made during the hearing, that these insurers may not have standing to raise the Act 312 requirements. We note with significance, however, that the trial court made no such finding and nothing to that effect is included in the judgment on appeal. Therefore, we pretermit any discussion of this issue, which is not dispositive of the matter before us.

2

contracts, while reserving its rights to recover against Certain Insurers for unpaid attorneys' fees, expert fees, and expenses incurred prior to the effective date of the settlement.

On April 28, 2017, the settling parties provided notice and a redacted copy of the settlement agreement to the LDNR and the AG, pursuant to the express requirements of La.R.S. 30:29(J). Thereafter, the LDNR issued a letter to the trial court on May 15, 2017, indicating that it had no objection to the settlement. The plaintiffs then moved for court approval of the settlement, which the trial court initially granted on May 25, 2017.

Subsequently, Certain Insurers requested a conference with the trial court, claiming that the court's approval of the settlement failed to comply with La.R.S. 30:29(J) because the trial court failed to: (1) hold a contradictory hearing; (2) determine if remediation was required; and if so, (3) order the deposit of funds into the court registry. On June 1, 2017, the trial court held a telephone conference with the parties and agreed, at Certain Insurers' request, to hold a contradictory hearing on June 9, 2017. Prior to that hearing, Certain Insurers filed a "response" to the plaintiffs' motion for approval of the settlement agreement and, in the alternative, a motion for new trial and/or for reconsideration.

From the outset, Certain Insurers always maintained that they did not object to the terms of the settlement. Rather, their sole argument was that La.R.S. 30:29(J) required that, prior to approval of any settlement agreement, the trial court had to determine whether remediation of the property was necessary and, if so, whether BP and Riceland were required to deposit any amount of the settlement funds into the registry of the court.

3

Rejecting the insurers' interpretation of La.R.S. 30:29(J), the trial court approved the settlement, finding the settling parties had complied with the requirements of La.R.S. 30:29(J). Finding no just reason for delay, the trial court designated the judgment as final pursuant to La.Code Civ.P. art. 1915(B). Certain Insurers now appeal the judgment of approval but raise no objections to the proposed settlement per se.

III.

**STANDARD OF REVIEW**

An appellate court reviews the approval of a settlement agreement pursuant to an abuse of discretion standard. *Opelousas Gen. Hosp. Auth. v. Fairpay Sols., Inc.*, 13-17 (La.App. 3 Cir. 7/3/13), 118 So.3d 1269. A trial court's interpretation of a statute, as a question of law, however, is reviewed under the de novo standard of review. *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-582 (La. 11/29/06), 943 So.2d 1037.

IV.

**LAW AND DISCUSSION**

The primary issue before this court is one of statutory interpretation. Specifically, we are called upon to interpret the provisions of La.R.S. 30:29(J)(1) to determine whether its requirements for approval of settlements in legacy lawsuits have been satisfied in this case.

In applying the general rules of statutory construction, we are mindful of the following axioms:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. *Theriot v. Midland*

4

*Risk Ins. Co.*, 95-2895 (La.5/20/97), 694 So.2d 184, 186. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. *Succession of Boyter*, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. *Boyter*, 756 So.2d at 1128; *Cat's Meow, Inc. v. City of New Orleans through Dep't of Fin.*, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. *State v. Johnson*, 03-2993 (La.10/19/04), 884 So.2d 568, 575; *Theriot*, 694 So.2d at 186.

The starting point in the interpretation of any statute is the language of the statute itself. *Johnson*, 884 So.2d at 575; *Theriot*, 694 So.2d at 186. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ.Code. art. 9; *Johnson*, 884 So.2d at 575. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; *Fontenot v. Reddell Vidrine Water Dist.*, 02-0439 (La.1/14/03), 836 So.2d 14, 20. Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.

*M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 12-13 (La. 7/1/08), 998 So.2d 16, 26-27. Courts are further required to construe words and phrases "according to the common and approved usage of the language" with the additional directive that the "word 'shall' is mandatory and the word 'may' is permissive." La.R.S. 1:3.

As the starting point in our interpretation, we turn now to the language of La.R.S. 30:29(J)(1), which provides, with emphasis supplied by this court:

In the event that any settlement is reached in a case subject to the provisions of this Section, the settlement ***shall*** be subject to approval by the court. The department

and the attorney general ***shall*** be given notice once the parties have reached a settlement in principle. The department ***shall*** then have no less than thirty days to review that settlement and comment to the court before the court certifies the settlement. ***If*** after a contradictory hearing the court requires remediation, the court ***shall*** not certify or approve any settlement until an amount of money sufficient to fund such remediation is deposited into the registry of the court. No funding of a settlement ***shall*** occur until the requirements of this Section have been satisfied. However, the court ***shall*** have the discretion to waive the requirements of this Section ***if*** the settlement reached is for a minimal amount and is not dispositive of the entire litigation.

A plain reading of these provisions reveals three requirements "***shall***" be applicable to all settlements in cases governed by Act 312: (1) the settlement "***shall*** be subject" to the trial court's approval (first sentence), but before which; (2) notice of the settlement "***shall*** be given" to the LDNR and the AG (second sentence); and, (3) the LDNR and the AG "***shall*** then have" thirty days to review the settlement and provide any comment to the trial court (third sentence). Through the use of the term "shall," the legislature explicitly renders these three requirements mandatory for all settlements and further prohibits the funding of any settlement until these requirements "have been satisfied" (fifth sentence).

Contrary to the position of Certain Insurers, however, the remaining mandatory provisions of the statute only come into play when certain circumstances are met, such as when (1) a contradictory hearing is held and the court requires remediation (fourth sentence), or (2) the settlement amount is de minimis and the settlement does not dispose of the entire matter (final sentence). In both of these sentences, the use of the conjunction "if" serves as an introduction to a conditional clause.

6

Under the fourth sentence, "the court *shall* not certify or approve any settlement" until sufficient funds for remediation are deposited, but this is only "[*i*]*f* after a contradictory hearing the court requires remediation." What is generally understood through the use of the adjective "contradictory" is the existence of opposing or inconsistent views. In this case, it is on the need for or extent of remediation. If there is no opposition to or concern for the settlement raised by either the state actors or another party with a vested interest, then there would be no corresponding need for a contradictory hearing and determination by the court on the issue of remediation and the cost thereof. It logically follows, therefore, that the need for a hearing is triggered by and conditioned upon an objection to the remediation proposed by the settling parties. In the absence of such an objection, settling parties need only provide the required notice to the LDNR and the AG and allow for the time mandated for review, after which time the settlement is ripe for the court's approval.

Nevertheless, the final sentence of the statute states that the court "*shall* have the discretion," in any given settlement, to waive the mandatory requirements in their entirety. But again the exercise of this discretion is conditioned upon a finding that the settlement amount is minimal and the settlement "is not dispositive of the entire litigation."

Under this plain reading of the statutory provisions, we find that La.R.S. 30:29(J)(1) does not, as Certain Insurers advance, require: (1) a contradictory hearing; (2) a finding concerning remediation; and, (3) a deposit of necessary funds for court approval in all settlements under Act 312. We further find that to read those requirements into the statute would, in effect, expand its

7

provisions beyond the explicit intent of the legislature, which both contemplated and sought to encourage court-approved settlements in these legacy lawsuits.

With this understanding of the statutory requirements, we turn now to the issue of whether the trial court legally erred in approving the settlement. Pursuant to La.R.S. 30:29(J)(1), the settling parties herein had to and did seek court approval after first providing the LDNR and the AG with notice and allowing thirty days for their review and comments on the proposed settlement. Because no one raised any objection to the settlement, all the mandatory requirements for approval were satisfied, and the trial court acted well within its authority to approve the settlement at that time.

Notably, no contradictory hearing was necessary for the determination of whether remediation was, in fact, required in the absence of the triggering condition, i.e., an objection by the LDNR, the AG, or another interested party. Even so, the trial court, clearly in an abundance of caution, conducted a hearing, at Certain Insurers' request, during which no evidence was introduced concerning the need for or extent of remediation. At this time, no one has ever contested or opposed the settlement or the remediation it proposes. Moreover, the settlement explicitly recognizes the need for remediation, and BP and Riceland expressly agree to remediate the property in accordance with state regulatory standards. The public purpose behind the enactment of Act 312 is to ensure

> the natural resources and the environment of the state, including ground water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest.

8

La.R.S. 30:29(A). To the extent that BP and Riceland agreed to remediate the property in accordance with the state regulatory standards, the remediation proposed by the settlement fully complies with the public policy of this state on this very issue. This begs the question of what further remediation could have been necessitated or required by the trial court.

Regardless, given that the settling parties provided the required notice to the LDNR and AG and waited the necessary time for the LDNR and AG to comment before seeking approval by the trial court, we find the trial court's approval of the settlement was legally sound and affirm its judgment accordingly.

V.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Costs of this appeal are assessed to the Third-Party Defendants/Appellants.

**AFFIRMED.**